**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD BENKOSKI and THEODORE CARL, | |
| Plaintiffs, | CIVIL ACTION NO. 3:07-CV-0197 |
| | (JUDGE CAPUTO) |
| v. | |
| BONNIE WASILEWSKI, Clerk, Pennsylvania State Police and Member, Bear Creek Township Board of Supervisors, in her official and individual capacities, et al., | |
| Defendants. | |

## <u>MEMORANDUM</u>

Presently before the Court are three (3) separate motions to dismiss Plaintiffs

Edward Benkoski and Theodore Carl's Amended Complaint (Doc. 14), filed by

Defendants Bonnie Wasilewski and Paulette Yenchik (Doc. 17), Jerry Butala and Jerry

Kincel (Doc. 18), and Francis J. Hacken (Doc. 33).  Because the Younger Doctrine does

not apply; Defendants Butala, Kinel, and Hacken are entitled to sovereign immunity from

state law claims only to the extent they were sued in their official capacities; Defendants

Wasilewski and Yenchik are not immune under the Tort Claims Act; Defendant Yenchik

is entitled to qualified immunity from Plaintiffs' federal claims but Defendant Wasilewski is

not; Plaintiffs have stated claims upon which relief can be granted for all counts except

(a) the First Amendment claim against Defendant Yenchik, (b)  the Fourteenth

Amendment claim against all Defendants, and (c)  the claims for monetary damages

under the Pennsylvania Constitution; and punitive damages under federal and state law

are not foreclosed, the Court will grant these motions in part and deny them in part.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

On April 2, 2007, Plaintiffs filed their Amended Complaint. (Doc. 14.)  Therein, they allege as follows.  In October of 2005, Plaintiff Carl organized a local political watchdog organization in Bear Creek Township known as the Residents of Bear Creek Township for Good Government and was later appointed auditor of the township. (Am. Compl., Doc. 14 ¶¶ 12-13.)  The newly elected Bear Creek Township Board of Supervisors then chose Defendant Wasilewski as chairperson and  Defendant Yenchik as secretary/treasurer and administrative assistant. (*Id.* ¶ 14.)

In January through March of 2006, Plaintiffs Carl and Benkoski requested that Defendant Wasilewski provide copies of receipts, disbursements, and employee time cards for the township, along with information on the positions the Supervisors were performing as paid township employees.  (*Id.* ¶¶ 15-17.)  Defendant Wasilewski refused to provide these records.  (*Id.*)

In May of 2006, after Plaintiff Benkoski filed a civil action in the Luzerne County Court of Common Pleas to compel production of the records, Defendant Wasilewski and Bear Creek Township agreed to make the requested records available by June 15, 2006. (*Id.* ¶¶ 18-19.)  On June 16, 2006, Plaintiffs went to the Bear Creek Township municipal building to review records, which were not provided, and Plaintiff Carl openly and without objection started a tape recorder to document the discovery process.  (*Id.* ¶ 19.)

2

Later that week, the county court ordered that the Defendants make the requested documents available to Plaintiffs by June 30, 2006. (*Id.* ¶¶ 20-21.)  On June 30, 2006, Plaintiffs returned to the municipal building and again, Plaintiff Carl openly and without objection started a tape recorder to make a record of the events that day. (*Id.* ¶¶ 22-23.) Defendant Yenchik refused to release the records absent Defendant Wasilewski's authorization, and Defendant Wasilewski did not provide authorization. (*Id.* ¶ 22.)

In July of 2006, the Residents of Bear Creek Township for Good Government published a newsletter in which Defendant Wasilewski was accused of issuing payments without proper verification, including payments to herself, as well as refusing to provide access to public records. (*Id.* ¶ 24.)  On July 20, 2006, Plaintiffs instituted a petition, opposed by Defendant Wasilewski, to increase the size of the Board of Supervisors from three (3) to five (5) members. (*Id.* ¶¶ 25-26.)  The next day, Plaintiff Benkoski filed a contempt petition against Defendant Wasilewski in the county court based on her failure to provide the requested public records. (*Id.* ¶ 27.)  Also, on July 24, 2006, Plaintiff Carl sent a letter to the Pennsylvania Ethics Commission requesting a ruling as to the propriety of Defendant Wasilewski's conduct. (*Id.* ¶ 28.)

Beginning on June 16, 2006, Defendants Wasilewski and Yenchik initiated a plan to file a false criminal complaint against Plaintiffs. (*Id.* ¶ 29.)  This plan was discussed with Defendant Hacken, who agreed to meet with and direct Defendants Butala and Kincel to assist in investigating Plaintiffs even though Defendants knew that Plaintiffs had not committed a crime. (*Id.*)

In the third week of July of 2006, Defendant Butala telephoned Plaintiff Carl's

home, spoke with his wife, and asked her if Plaintiff Carl was a friend of Plaintiff Benkoski (*Id.* ¶ 32.)  Defendant Butala also stated that he wanted to interview Plaintiff Carl about an incident that occurred at the municipal building on June 16, 2006. (*Id.*)  On July 29, 2006, Defendants Butala and Kincel went to Plaintiff Carl's home, read him his Miranda rights, and questioned him regarding his open and unobjected to tape recordings of his effort to obtain public records on June 16 and June 30 of 2006. (*Id.* ¶ 33.)

On August 11, 2006, Defendant Butala went to Plaintiff Benkoski's home, read him his Miranda rights, and questioned him regarding the open and unobjected to tape recordings made on June 16 and June 30 of 2006. (*Id.* ¶ 34.)  Defendant Butala informed Plaintiff Benkoski that he and Plaintiff Carl were being investigated for a felony and that the investigation was being conducted at the behest of Defendant Wasilewski. (*Id.* ¶¶ 35-36.)  Defendant Butala stated that Plaintiff Benkoski was not under arrest at that time, but that Butala was proceeding immediately to the Luzerne County District Attorney's Office to discuss a possible felony prosecution. (*Id.* ¶¶ 36-37.)

Defendants never consulted with the Luzerne County District Attorney's Office regarding the possible prosecution of Plaintiffs. (*Id.* ¶ 39.)  Defendants never even intended to do so. (*Id.* ¶ 40.)  All of Defendants' actions were taken with the knowledge that no crime was committed by Plaintiffs. (*Id.* ¶ 38.)

As a result of the investigation conducted by Defendants, Plaintiffs were required to retain criminal defense counsel. (*Id.* ¶ 41.)  When their counsel contacted Defendant Kincel concerning the investigation, Kincel stated that no felony charges would be filed against Plaintiffs so long as they "ma[d]e nice" with Defendant Wasilewski. (*Id.* ¶ 42.)

Plaintiffs desire to continue to engage in political activity to achieve a fiscally sound Bear Creek Township government and a responsible Board of Supervisors. (*Id.* ¶ 44.) Defendants, however, have retained the option of instituting false felony charges against Plaintiffs if they do not cease their political opposition to Defendant Wasilewski. (*Id.* ¶ 43.)

On November 7, 2006, the voters of Bear Creek Township changed the municipal form of government from a three (3) person Board of Supervisors to a five (5) person Board. (*Id.* ¶ 45.)  Plaintiff Benkoski, a former member of the Board of Supervisors, is a likely Democratic candidate for one of the newly created seats. (*Id.* ¶ 46.)  Plaintiff Carl is a likely Republican candidate for one of the newly created seats. (*Id.* ¶ 47.)  Plaintiffs fear being barred from serving on the Board of Supervisors, pursuant to the Pennsylvania Constitution, as a result of being convicted of the baseless felony charges with which they have been, and continue to be, threatened by Defendants. (*Id.* ¶¶ 48, 50.)

On November 20, 2006, an unidentified state trooper went to Plaintiff Carl's house and spoke with his wife, supposedly to investigate the activation of a burglar alarm, although no alarm had been activated. (*Id.* ¶ 49.)

Plaintiffs claim that their First and Fourteenth Amendment rights were violated and seek redress pursuant to 42 U.S.C. § 1983 (*Id.* ¶¶ 51-57.), the federal statute that provides a remedy for persons who have been deprived of their federal constitutional rights by a person acting under color of state law.  Plaintiffs also allege that their rights to free speech, political association, and assembly under the Pennsylvania Constitution were violated. (*Id.* ¶¶ 58-59.)  Finally, Plaintiffs assert that Defendants committed the state law tort of intrusion upon seclusion. (*Id.* ¶¶ 60-63.)  Plaintiffs seek monetary and

equitable relief.

On April 23, 2007, Defendants Wasilewski and Yenchik filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and on the grounds that Defendants Wasilewski and Yenchik are entitled to qualified immunity and governmental immunity, and that Plaintiffs' claims are barred by the *Younger* doctrine. (Mot. to Dismiss by Defs. Wasilewski & Yenchik, Doc. 17.)  On April 25, 2007, Defendants Butala and Kincel filed their motion to dismiss Plaintiffs' state law claims in Counts II and III pursuant to Rule 12(b)(1) on the grounds that they are barred by sovereign immunity, and to dismiss Counts I and III of Plaintiff's Amended Complaint pursuant to Rule 12(b)(6).  (Mot. of Defs. Butala & Kincel to Dismiss Pls.' Am. Compl., Doc. 18.)  Defendant Hacken filed a similar motion on May 18, 2007. (Mot. of Def. Hacken to Dismiss Pls.' Am. Compl., Doc. 33.)  Defendants filed supporting briefs. (Docs. 29, 34.)  Plaintiffs filed briefs in opposition on May 17, 2007 (Doc. 32) and June 5, 2007 (Doc. 38).  Defendants filed reply briefs on June 1, 2007 (Doc. 36) and June 22, 2007 (Doc. 41).  As such, Defendants' motions are fully briefed and now ripe for disposition.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting as true all of the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, ---

6

L.Ed.2d ---- (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d. 80 (1957)).  As a result of the *Twombly* holding, Plaintiffs must now nudge their claims "across the line from conceivable to plausible" to avoid dismissal thereof.  *Id*.  The Supreme Court noted just two weeks later in *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, --- L.Ed.2d ---- (2007) (per curiam), that *Twombly* is not inconsistent with the language of Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Id*. (citing *Twombly*, 127 S.Ct. at 1959 (quoting *Conley*, 355 U.S. at 47)).

There has been some recent guidance from the Courts of Appeals about the apparently conflicting signals of *Twombly* and *Erickson.*  The Second Circuit Court of Appeals reasoned that "the [Supreme] Court is not requiring [in *Twombly*] a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  Similarly, the Seventh Circuit Court of Appeals stated that "[t]aking *Erickson* and *Twombly* together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."  *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, — F.3d —, 2007 WL 2406859, at *4 (7th Cir. Aug. 24, 2007).

Until further guidance, this Court will follow the guidance of the Second and Seventh Circuit Courts of Appeals, and apply a flexible "plausibility" standard, on a case-by-case basis, in those contexts in which it is deemed appropriate that the pleader be obliged to amplify a claim with sufficient factual allegations.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether the plaintiff will ultimately prevail.  *See id.*  In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

8

Unlike dismissal under Federal Rule of Civil Procedure Rule 12(b)(6), dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks the authority to hear the case. *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A Rule 12(b)(1) motion may be treated either as a facial or a factual challenge to the court's subject matter jurisdiction. *Gould*, 220 F.3d at 178 (3d Cir. 2000). If the motion is treated as a facial attack, the court may consider only the allegations contained in the complaint and the exhibits attached to the complaint, matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies, and "undisputably authentic" documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss. *See generally Pension Benefit Guar. Corp.,* 998 F.2d at 1196-97.

On the other hand, if the defendant submits and the court considers evidence that controverts the plaintiff's allegations, the court must treat the motion as a factual challenge under Rule 12(b)(1). *Gould*, 220 F.3d at 178. In such cases, "the trial court is free to weigh evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. No presumption of truthfulness attaches to the allegations in the plaintiff's complaint, and the burden of proof is on the plaintiff to show that the court possesses jurisdiction. *Id.* However, the plaintiff must be permitted to respond to the defendant's evidence with evidence supporting jurisdiction. *Id.* In the present matter, Defendants have submitted no evidence controverting the allegations contained in Plaintiffs' Amended Complaint. Therefore, the Court will consider only the allegations in

the Plaintiffs' Amended Complaint, treating the Defendants' motions to dismiss as a facial

attack on subject matter jurisdiction pursuant to Rule 12(b)(1) to the extent that they raise

the issue of sovereign immunity.


**DISCUSSION**

**I.      Younger and Rooker-Feldman Doctrines**

Defendants Wasilewski and Yenchik contend, in their motion to dismiss, that

Counts I and II are precluded by the *Rooker-Feldman* doctrine (Mot. to Dismiss by Defs.

Wasilewski & Yenchik, Doc. 17 ¶ 12.), under which federal district courts lack subject

matter jurisdiction to review the final decisions of state courts or constitutional claims that

are "inextricably intertwined" with a state court's decision.  *FOCUS v. Allegheny County

Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) (internal quotation marks

omitted; replacement in original).  The Defendants, however, did not include arguments

about the applicability of the *Rooker-Feldman* doctrine in their briefs and did not identify

any state court proceedings as inextricably intertwined with the instant case.  The Court

therefore will deny Defendants' motion to the extent it relies on this doctrine.

The Defendants' brief does argue that, under the *Younger* doctrine, this Court

should not exercise jurisdiction over Plaintiffs' claims, to avoid interfering with a pending

state court proceeding.  (Br. in Supp. of Mot. of Defs. Wasilewski & Yenchik to Dismiss

Pls.' Am. Compl., Doc. 29, at 8-9.)  Under the *Younger* doctrine, a district court may

abstain from asserting jurisdiction if "(1) there [is] an ongoing state judicial proceeding to

which the federal plaintiff is a party and with which the federal proceedings will interfere,

(2) the state proceedings ... implicate important state interests, and (3) the state

proceedings ... afford an adequate opportunity to raise the constitutional claims."

*FOCUS*, 75 F.3d, at 843.  Defendants aver that there are ongoing state court

proceedings in this matter, while Plaintiffs assert that no such proceedings exist.  The

only state court proceedings of which this Court has been made aware are those in the

Luzerne County Court of Common Pleas through which Plaintiff Benkoski sought to

compel Defendant Wasilewski to produce public records.  (*See* Am. Compl., Doc. 14 ¶¶

20-21, 27.)  Though the existence of those proceedings is part of the factual basis for the

complaint, their relevance to this case stops there.  Because Defendants' briefs do not

cite to any ongoing state court proceedings and present no arguments that any such

proceedings meet the three requirements for a *Younger* abstention outlined above, the

Court will not abstain from exercising jurisdiction.


## II. Sovereign Immunity for Defendants Butala, Kincel, and Hacken

Defendants Butala, Kincel, and Hacken, all employees of the Pennsylvania State

Police who have been sued in their official and individual capacities, move to dismiss

Counts II and III as to themselves for lack of subject matter jurisdiction on the ground that

the claims are barred by sovereign immunity.  (Br. in Supp. of Mot. of Defs. Butala,

Kincel, & Hacken to Dismiss Pls.' Am. Compl., Doc. 34, at 10-11.)

Officials and employees of the Commonwealth of Pennsylvania acting in the scope

of their duties are immune from all suits for state law claims, including state constitutional

claims, except nine categories of negligence actions for which the state has expressly

11

waived sovereign immunity.  1 Pa. Cons. Stat. Ann.  § 2310; 42 Pa. Cons. Stat. Ann. §§ 8521(b), 8522(b); *Marsh v. Ladd*, No. 03-5977, 2004 WL 2441088, at *8 (E.D. Pa. Oct. 27, 2004); *Faust v. Dep't of Revenue*, 592 A.2d 835, 839 (Pa. Commw. Ct. 1991), *appeal denied,* 607 A.2d 257 (Pa. 1992).

Plaintiffs do not dispute that none of the statutory exceptions apply to their claims, but they argue that their claims are not barred by sovereign immunity to the extent that they seek declaratory and injunctive relief.  The applicability of sovereign immunity from Pennsylvania state law claims depends on the type of declaratory and injunctive relief sought.  "Suits which seek to compel *affirmative action on the part of state officials* or to obtain money damages or to recover property from the Commonwealth are within the rule of immunity; suits which simply seek to restrain state officials from performing affirmative acts are not within the rule of immunity."  *Fawber v. Cohen*, 516 A.2d 429, 433-34 (Pa. 1987) (emphasis deleted).  Plaintiffs' request that the Court enjoin Defendants from future actions that violate their speech, association, and civil rights; intrude upon their seclusion; or retaliate against them for exercise of their rights is the type of injunctive relief that seeks "to restrain state officials from performing affirmative acts," and does not fall within the rule of sovereign immunity.  *See id.* at 433-34.  Declaratory relief, which Plaintiffs also seek, is not considered to compel an affirmative act and does not fall within the rule of immunity.  *Id.* at 434.

With regard to Plaintiffs' request for damages, Defendants enjoy sovereign immunity from suit in their official capacities.  But Plaintiffs argue that sovereign immunity is unavailable to Defendants, to the extent that they were sued in their individual

capacities, because their alleged actions were not within the scope of their duties.  For

purposes of sovereign immunity in Pennsylvania, conduct is within the scope of

employment if and only if

> (a) it is of the kind [the state employee] is employed to perform; (b) it
>
> occurs substantially within the authorized time and space limits; (c) it is
>
> actuated, at least in part, by a purpose to serve the master; and (d) if
>
> force is intentionally used by the servant against another, the use of force
>
> is not unexpected by the master.

*St. Germain v. Pa. Liquor Control Bd.*, No. CIV. A. 98-5437, 2000 WL 39065, at *3 (E.D.

Pa. Jan. 19, 2000).   Plaintiffs argue that they have sufficiently alleged that the officers

acted outside the scope of their duties, creating a factual question that renders dismissal

on sovereign immunity inappropriate at this time.  The Court agrees.  Despite the factual

nature of this inquiry, sovereign immunity has been granted to defendants when it was

clear on the pleadings that no individual capacity claims could be raised.  *See*

*Stackhouse v. Pa. State Police*, 892 A.2d 54, 60 (Pa. Commw. Ct. 2006) (holding that the

factual allegations in the complaint, in which plaintiffs claimed a defendant's motivation

was personal but alleged only a failure to exercise an *official* duty, belied the plaintiffs'

claim that defendants were acting outside the scope of their employment).  In this case,

however, Plaintiffs allege that Defendants Hacken, Butala, and Kinel participated in a

plan initiated by Defendants Wasilewski and Yenchik to "write a false criminal complaint

against Ed Benkoski and Ted Carl" and to investigate Plaintiffs "even though all

defendants knew that no crime had been committed."  (Am. Compl., Doc 14 ¶¶ 29-31.)

Plaintiffs also allege that Trooper Kincel told them no charges would be filed if they would

13

"make nice" with Defendant Wasilewski.  (*Id.* ¶ 43.)  Viewing these allegations in the light most favorable to plaintiffs, it cannot be said that Defendants' actions fall entirely within the scope of their duties.  *See, e.g.*, *Robus v. Pa. Dep't of Corr.*, No. CIV. A. 04-2175, 2006 WL 2060615, at *8 (E.D. Pa. July 20, 2006) ("Because it can be reasonably inferred from the amended complaint that personal concerns alone motivated Raymond Knauer's actions, the amended complaint adequately alleges that Raymond Knauer acted outside the scope of his duty.").

For the reasons set forth above, Defendant officers' motion to dismiss Counts II and III as to them on the ground of sovereign immunity will be denied, except that it will be granted to the extent that the Defendants were sued in their official capacities for damages.

### III. Governmental Immunity from State Law Claims for Defendants Wasilewski and Yenchik

Defendants Wasilewski and Yenchik claim immunity from Plaintiffs' state law claim in Count III under Pennsylvania's Tort Claims Act, 42 Pa. Con. Stat. Ann. §§ 8541-42. This claim of immunity applies only to Count III, not to Count II, because the Act does not provide any immunity from claims based in the Pennsylvania Constitution.  *Coffman v. Wilson Police Dep't*, 739 F.Supp 257, 266 (E.D. Pa. 1990).  The Tort Claims Act provides immunity to municipalities and municipal employees sued in their official capacities. *Renk v. City of Pittsburgh*, 641 A.2d 289, 292 (Pa. 1994).  It does not, however, provide immunity to an employee who is sued for actions that are "crimes, actual fraud, actual malice, or willful misconduct."  *Jones v. City of Philadelphia*, 73 Pa. D. & C. 246, 255 (Pa. Ct. Com. Pl. May 19, 2005).  Plaintiffs have alleged that Defendants Wasilewski and

Yenchik committed the tort of Intrusion on Seclusion by engaging in willful misconduct. (Am. Compl., Doc. 14 ¶¶ 29-30, 36, 38, 63.).  Therefore, immunity under the Tort Claims Act is not applicable, and Defendants' motion to dismiss on the basis of governmental immunity will be denied.

## IV. Qualified Immunity for Defendants Wasilewski and Yenchik

In response to Plaintiffs' federal claims in Count I, Defendants Wasilewski and Yenchik assert the defense of qualified immunity.  Qualified immunity involves a two-step inquiry.  The Court must first determine whether the Plaintiffs' factual allegations amount to a violation of a constitutional right.  If they do, the Court must then determine whether the right was clearly established such that a reasonable official would have known the conduct was unlawful.  *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

### A. First Amendment Retaliation

### 1. Have Plaintiffs Alleged a Constitutional Violation?

"The First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  A First Amendment retaliation claim has three elements: (1) that plaintiff engaged in conduct or speech protected by the First Amendment; (2) that the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) that the protected activity caused the retaliation.  *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).

For the purposes of this motion, Defendants do not dispute that Plaintiffs engaged

in protected activity.  (S*ee* Br. in Supp. of Mot. of Defs. Wasilewski & Yenchik to Dismiss

Pls.' Am. Compl., Doc. 29, at 6.)  Further, the Plaintiffs' complaint sufficiently alleges that

their protected activity caused the alleged retaliation.  (*See* Am. Compl., Doc. 14 ¶¶ 30,

32-34, 42.)  The key question is whether the retaliatory actions that Defendants

Wasilewski and Yenchik allegedly took were sufficient to deter a person of ordinary

firmness from exercising his First Amendment rights.  Despite Defendants' contention

that Plaintiffs were not deterred because they both intend to become candidates for

Supervisor in upcoming elections (*see* Defs. Reply Br. in Supp. of Mot. to Dismiss, Doc.

36, at 6-7), guidance from other circuits clarifies that plaintiffs need not claim that they

were in fact deterred, but only that the Defendant's alleged actions "were capable of

deterring a person of ordinary firmness."  *Ctr. for Bio-Ethical Reform, Inc. v. City of

Springboro*, 477 F.3d 807, 821 (6th Cir. 2007).

A recent case from the Third Circuit Court of Appeals is on point.  In *Thomas v.

Independence Township*, a plaintiff successfully stated a claim for First Amendment

retaliation when he alleged that, in response to his attempt to transfer a liquor license to

his deli and his petitioning of the state court when his application was denied, the

township and members of its board of supervisors "engaged in a campaign of

harassment and intimidation" against him, including having police officers under their

supervision enter the plaintiffs' business without probable cause, accusing one plaintiff of

violating the law, misrepresenting the laws, conducting surveillance of plaintiffs and their

business from across the street, conducting unlawful searches and seizures, and

"threatening and/or causing unwarranted investigations of the Plaintiffs by other

governmental agencies."  463 F.3d 285, 289-90, 296 (3d Cir. 2006) (internal quotation

marks omitted).

Additionally, Plaintiffs assert they have been subjected to the continuing threat of future false felony charges, and the Court of Appeals in this Circuit has recognized a pattern of threats and harassment as sufficient to state a claim for First Amendment retaliation.  *See Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000).


(a) Defendant Wasilewski

The alleged actions of Defendant Wasilewski in this case are similar to the conduct at issue in *Thomas*.  Defendant Wasilewski, a co-worker of the police defendants, is alleged to have pressured Defendant Lieutenant Hacken to assure that he and the other troopers pursued felony charges against the Plaintiffs, and Defendant Butala did indeed inform the Plaintiffs that they were being investigated for a felony. (Am. Compl., Doc 14 ¶¶ 35-36.)  One important distinction is that Defendants Wasilewski and Yenchik are not alleged to have direct supervisory authority over the Defendant troopers in this case, but the allegations of pressure from Defendant Wasilewski is consistent with an inference that she exerted some control over the troopers.  The degree of control over the troopers actions presents a factual question.

Also similar to *Thomas* is the threat of unwarranted investigations.  Here, pressure from Defendant Wasilewski is alleged to have caused the troopers to threaten, without basis or intent to follow through, to consult with the District Attorney concerning felony prosecution, and that pressure also allegedly caused the troopers to imply that no felony charges would be filed if the Plaintiffs "ma[d]e nice" with Defendant Wasilewski.  (*Id.* ¶¶ 37-43.)

17

The occasional officer visits and phone calls to the Plaintiffs' homes in this case were perhaps less serious than the surveillance alleged in *Thomas*, and no unlawful searches or seizures are alleged here, but nonetheless, because "it is generally a question of fact whether a retaliatory campaign of harassment has reached the threshold of actionability under § 1983," *Suppan*, 203 F.3d at 233, and because the alleged conduct in this case is substantially similar to the allegations that were held to constitute a constitutional violation in *Thomas*, this Court concludes that Plaintiffs have alleged a constitutional violation by Defendant Wasilewski.

(b) Defendant Yenchik

The only retaliatory conduct that Defendant Yenchik allegedly committed, on the other hand, is that she acted in collusion with the other defendants and that she and her direct supervisor Defendant Wasilewski initiated a plan to write a false criminal complaint against the Plaintiffs (Am. Compl., Doc. 14 ¶ 11, 29.)  Plaintiffs do not allege that this complaint was ever written, or that prosecution was initiated; their claim rests on a retaliatory pattern of harassment and threats which appear, from the complaint, to have been carried out by troopers at the behest of Defendant Wasilewski.  Therefore, Plaintiffs have not alleged that Defendant Yenchik committed a constitutional violation, and qualified immunity will be granted as to her on the First Amendment claim in Count I.

## 2. Were the Plaintiffs' Rights Clearly Established?

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  There need not be precedent involving "the very act in question," but "in light of pre-existing law the unlawfulness must be apparent."  *Id.*  Rights can be clearly established by "cases of controlling authority in [this] jurisdiction at time of the incident[s]" or by "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful."  *Wilson v. Layne*, 526 U.S. 603, 617 (1999).  Although Defendants cite older caselaw to the contrary, it is now understood in this Circuit that "the burden of pleading qualified immunity rests with the defendant, not the plaintiff. ... [A] plaintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds."  *Thomas*, 463 F.3d at 293.

The three-part test for First Amendment retaliation outside the public employment context is clearly established in this Circuit, as well as others.  *E.g., id.* at 296; *see also, e.g., Ctr. for Bio-Ethical Reform*, 477 F.3d at 821 (Sixth Circuit case)*; Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).  Defendant Wasilewski does not argue that it was not clearly established that the Plaintiffs' conduct was constitutionally protected activity, but does argue that even if her actions are found to be retaliatory, and "assuming the facts alleged by Plaintiffs are true, [she] would not have understood that [she was] violating Plaintiff's constitutional rights by acting in conjunction with the Pennsylvania State Police regarding the felony investigation of Plaintiffs."  (Br. in Supp. of Defs.' Wasilewski & Yenchik's Mot. to Dismiss, Doc. 29, at 10.)  If the facts alleged by Plaintiffs are true, then Defendant Wasilewski retaliated against Plaintiffs *because* of their exercise of constitutional rights, (Am. Compl., Doc. 14, ¶ 30.), which is clearly established as the third element of a retaliation claim.  *Cf. Ctr. for Bio-Ethical Reform*, 477 F.3d at 823 ("[A]

reasonable officer, when faced with the circumstances of this case [in which the sufficiency of the deterrence was already established] would have known that detaining Plaintiffs *because of* their speech would violate their clearly established First Amendment rights.").

Finally, it was clearly established at the time this case arose that Defendant Wasilewski's alleged conduct would deter a person of ordinary firmness from exercising constitutional rights.  Although the factually similar *Thomas* case was not decided until after the actions giving rise to this complaint took place, other cases provide sufficient guidance.  To begin, the Supreme Court has stated that "even an act of retaliation as trivial as failing to hold a birthday party for a public employee ... when intended to punish her for exercising her free speech rights" may be actionable retaliation.  *Rutan v. Republican Party* 497 U.S. 62, 76 n.8 (1990).  And the Third Circuit Court of Appeals recently stated that "[a] First Amendment retaliation claim will lie for any individual act which meets this 'deterrence threshold' and that threshold is very low: as we said in *Suppan*, a cause of action is supplied by all but truly de minimis violations."  *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006).

The Third Circuit Court of Appeals did acknowledge that  "[i]n *Suppan* [*v. Dadonna*, 203 F.3d 228 (3d Cir. 2000)] ... we gave little guidance as to what the threshold of actionability is in retaliatory harassment cases.  Instead, we merely held that such a claim existed." *McKee v. Hart*, 436 F.3d 165, 172 (3d Cir. 2006).  And it has noted that there is a "dearth of precedent of sufficient specificity ... regarding [an individual's] First Amendment right to be free from retaliatory harassment."  *McKee*, 436 F.3d at 173.

Nonetheless, guidance from other circuits clearly establishes that the police

20

surveillance and threats of false felony charges that Plaintiffs allege were clearly established as sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.  An oft-cited case from the Seventh Circuit held that an injury allegedly caused by retaliation "need not be great in order to be actionable" and held that an alleged "campaign of petty harassments" was sufficiently deterring to be actionable. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).  Other cases suggest that the line between lawful and unlawful retaliation is the line between mere speech and conduct that goes a step further.  For example, the Fourth Circuit Court of Appeals held that a claim for First Amendment retaliation does not exist when the "alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000).

Additionally, Plaintiffs cite a case from the Eighth Circuit with facts quite similar to those alleged here.  In *Garcia v. City of Trenton*, the Court of Appeals held that a jury could find that issuing two relatively inexpensive parking tickets, in a period of two months, to a plaintiff who had complained to city officials about bikers illegally riding on the sidewalk in front of her shop, was sufficient to deter a person of ordinary firmness from exercising her rights. 348 F.3d 726, 727-29 (8th Cir. 2003).  The court distinguished past cases, noting that in *Garcia*, "defendant's conduct went beyond mere speech, however offensive."  *Id.* at 729.  The defendants in *Garcia,* the mayor and chief of police, allegedly "engaged the punitive machinery of government in order to punish [the plaintiff] for speaking out."  *Id*.  Defendant Wasilewski is alleged to have taken substantially similar

21

action, and in light of clearly established precedent in the Third Circuit and others, she is not entitled to qualified immunity from the First Amendment claims in Count I.

### B. Fourteenth Amendment Claim
#### 1. Have Plaintiffs Alleged a Constitutional Violation?

Plaintiffs' complaint and their brief in opposition to Defendants Wasilewski and Yenchik's motion to dismiss, the motion under which qualified immunity is raised, does not illuminate the reasoning that underlies their claim that their rights under the Fourteenth Amendment have been violated.  In their response to Defendants Butala, Kinel, and Hacken's motion to dismiss, however, Plaintiffs allege a substantive due process violation, but they argue only that the police defendants have taken actions which "shock the conscience," and make no mention of Defendants Wasilewski or Yenchik.  Therefore, Plaintiffs have failed to allege a Fourteenth Amendment violation against Defendants Wasilewski and Yenchik.  These defendants are therefore entitled to qualified immunity from the Fourteenth Amendment claims in Count I.

## V. Federal Claims

### A. First Amendment Retaliation

No First Amendment retaliation claim remains against Defendant Yenchik.  *See* Part IV(A)(1)(b), *supra*.  And, as discussed above, Plaintiffs have stated a valid claim for First Amendment retaliation against Defendant Wasilewski.  *See* Part IV(A)(1)(a), *supra.* Therefore, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be denied as to Defendant Wasilewski.

The alleged conduct of Defendants Butala, Kincel, and Hacken, performed in

collusion with Defendant Wasilewski to retaliate against Plaintiffs for their exercise of

protected First Amendment rights, meets the three-part test for a First Amendment

retaliation claim.  As they are alleged to have carried out the retaliatory actions and

participated in the planning, their conduct is not separable from Defendant Wasilewski's

for purposes of this motion.  Their motion to dismiss Count I of the complaint pursuant to

Federal Rule of Procedure 12(b)(6) will therefore be denied.


### B.    Fourteenth Amendment

Defendants Wasilewski and Yenchik were granted qualified immunity as to the

Fourteenth Amendment claim of Count I because, in the first step of the qualified

immunity analysis, Plaintiffs failed to state a claim that those defendants violated their

Fourteenth Amendment rights.  *See* Part IV(B), *supra*.  Likewise, Plaintiffs have failed to

state a claim that the other defendants violated their rights under the substantive

component of the Due Process Clause of the Fourteenth Amendment.  Plaintiffs argue

that they have stated a valid claim because the Defendants engaged in a police effort to

control the political life of a township; this conduct, the Plaintiffs aver, "is so

fundamentally anti-democratic as to be breathtaking.  It shocks the conscience."  (Pls.'

Br. in Opp'n to Mot. to Dismiss of Defs. Hacken, Butala & Kincel, Doc. 38, at 9.)  The

Plaintiffs' claims, however, are based on the Defendants' retaliation for the exercise of

their First Amendment rights.  As such, the "shocks the conscience" test does not apply.

"After the Supreme Court's decision in *Graham*, we held in a number of cases that

the 'shocks the conscience' test applied *only* to claims that could not be traced to an

23

explicit constitutional guarantee." *Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002)

(holding the shocks the conscience test is the inappropriate standard for First

Amendment retaliation claims). *Graham*, in which the Supreme Court held that claims for

excessive force must be brought only under the Fourth Amendment, rather than under

the "shocks the conscience" test, 490 U.S. 386 (1989), was based on "the idea that,

where available, explicit constitutional guarantees ... offer a more concrete, and therefore

superior, guide to judges than intuitive standards such as 'behavior that shocks the

conscience.'" *Bradley v. City of Pontiac*, 906 F.2d 220, 226 (6th Cir. 1990).  Because the

more concrete guide of First Amendment retaliation jurisprudence applies to Plaintiffs'

claims, they have no separate claim under the Fourteenth Amendment.  Defendant's

motion to dismiss the Fourteenth Amendment claims under Count I will be granted.

**VI.    State Claims**

   **A. Pennsylvania Constitution**

There is no private cause of action for damages arising from violations of the

Pennsylvania Constitution.  *See Jones v. City of Philadelphia*, 890 A.2d 1188, 1215-16

(Pa. Commw. Ct. 2006) (discussing the lack of a cause of action for damages under the

Pennsylvania Constitution and declining, "without the benefit of legislative action," to

create such a cause of action for violations of the state constitution's prohibition against

the use of excessive force).  Therefore, Defendants' motions to dismiss Count II of the

Plaintiffs' Amended Complaint pursuant to Federal Rule of Procedure 12(b)(6) will be

granted to the extent that Plaintiffs seek monetary relief.

Although monetary relief is unavailable, "other remedies, such as declaratory or

injunctive relief ... are ... remedies under the Pennsylvania Constitution." *Id.* at 1216.  For example, in *Uniontown Newspapers, Inc. v. Roberts*, in which plaintiff newspaper sought declaratory relief, the Supreme Court of Pennsylvania held that allegations of "an improper act of retaliation against perceived critics and an attempt to chill the exercise of Plaintiff's rights under the First Amendment of the United States Constitution *and Article I, Section 7 of the Pennsylvania Constitution* ... aver a theory of law from which relief may be granted" and that the lower court "erred by not considering [plaintiffs'] claims under Article I, § 7 of the Pennsylvania Constitution."  839 A.2d 185, 192-93 (Pa. 2003) (emphasis added).

With regard to the remaining claims for declaratory and injunctive relief under Count II (*see* Am. Compl., Doc. 14 ¶ 59(A)-(C).), Defendants Butala, Kincel, and Hacken do not argue or aver that Plaintiffs failed to state a claim under the Pennsylvania Constitution.  Although their motions themselves do not specify on which grounds they seek to dismiss which counts, (*see* Mot. of Defs. Butala & Kincel to Dismiss Pls.' Am. Compl., Doc 18, at 1; Mot. of Def. Hacken to Dismiss Pls.' Am. Compl., Doc. 33, at 1.), their briefs' only arguments in response to Count II are based on sovereign immunity. The Court will therefore not dismiss the claims in Count II against Defendants Butala, Kincel, and Hacken for declaratory and injunctive relief.

With regard to the remaining claims for declaratory and injunctive relief in Count II against Defendants Wasilewski and Yenchik, their motion and headings in their briefs aver that Plaintiffs failed to state a cause of action for violation of free speech, political association and assembly rights under the Pennsylvania Constitution.  (Mot. of Defs.

Wasilewski & Yenchik, Doc 17 ¶ 13; Br. in Supp. of Defs.' Wasilewski & Yenchik's Mot. to

Dismiss Pls.' Am. Compl., Doc 29, at 3-4).  But their arguments are based only on the

United States Constitution and make no mention to Pennsylvania constitutional law.

(*See* Br. in Supp. of Defs.' Wasilewski & Yenchik's Mot. to Dismiss Pls.' Am. Compl., Doc

29, at 4-8.)  Because they have presented no arguments that Plaintiffs failed to state a

claim under the Pennsylvania Constitution, their motion to dismiss the remaining

declaratory and injunctive relief claims in Count II pursuant to Federal Rule of Civil

Procedure 12(b)(6) will be denied.

### B. Intrusion upon Seclusion

All Defendants move to dismiss Count III of Plaintiffs' Amended Complaint,

alleging the tort of Intrusion on Seclusion.  The tort is committed when one "intentionally

intrudes, physically or otherwise, on the solitude or seclusion of another person, or the

person's private affairs or concerns ... [that] would be highly offensive to [a] reasonable

person."  *DeBlasio v. Pignoli*, 918 A.2d 822, 824-25 (Pa. Commw. Ct. 2007) (quoting

Pennsylvania jury instructions).

Pennsylvania applies the Restatement (Second) of Torts in Intrusion on Seclusion

cases.  *E.g., Harris by Harris v. Easton Publg. Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct.

1984).  Under the Restatement, the act of intrusion, which can take the form of "physical

intrusion, ... use of the defendant's senses ... to oversee or overhear the plaintiff's private

affairs, ... or some other form of investigation or examination into plaintiff's private

concerns."  RESTATEMENT (SECOND) OF TORTS § 652B cmt. b.  Plaintiffs have alleged that

defendants, either personally or by conspiracy, twice entered their homes by false

pretenses, sent market police cars and uniformed officers their homes, phoned Plaintiff Carl's home, and informed them they were being investigated.  (Am. Compl., Doc. 14 ¶¶ 32-40, 49, 61.)  Plaintiffs have alleged acts of intrusion into the privacy of their homes.

Defendants contend that the acts of intrusion in the Plaintiff's complaint could not be highly offensive to a reasonable person.  (Reply Br. in Supp. of Mot. to Dismiss by Defs. Wasilewski & Yenchik, Doc 36, at 8-9; Br. in Supp. of Mot. of Defs. Butala, Kincel & Hacken to Dismiss Pls.' Am. Compl., Doc 34, at 11-12.)  Indeed, comment (d) of the Restatement, which is not binding here but may provide guidance, provides that "there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt.  It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff ... that his privacy is invaded."

Plaintiffs contend, in response, that the intrusion alleged was "direct and personal" and more offensive and intrusive because it was carried out by police rather than private parties.  (Pls.' Br. in Opp'n to Mot. to Dismiss of Defs. Hacken, Butala & Kincel, at 13.) They further allege in their Amended Complaint, that Defendants have indicated that, unless they cease their political opposition to Defendant Wasilewski, the felony investigation will continue.  Although the requirement that alleged acts of intrusion would be highly offensive to a reasonable person presents a high bar, the law is not well developed enough in the factual scenario that Plaintiffs allege to conclude that a jury could not find that the alleged intrusion would be highly offensive to a reasonable person. Defendants' motions to dismiss this count therefore will be denied.

## VII. Punitive Damages

Defendants Wasilewski and Yenchik move to dismiss Plaintiffs' request for punitive damages arising out of both their federal and state law claims.  In suits brought pursuant to 42 U.S.C. § 1983, punitive damages may be recovered from individual officers but not from government entities, if the officers "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  As Defendants have all been sued in their individual capacities, not only their official capacities, and as Plaintiffs have alleged that Defendants engaged in intentional conduct, aimed at retaliating against Plaintiffs for their exercise of their federally protected rights, punitive damages are not inappropriate on the face of the Amended Complaint.

Regarding Plaintiffs' state law claims, under Pennsylvania law, "punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton, or reckless conduct."  *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005).  In determining whether punitive damages are warranted in a particular case, "[t]he state of mind of the actor is vital.  The act, or the failure to act, must be intentional, reckless or malicious."  *Id.*  As the Plaintiffs' state constitutional and tort claims are based on allegations of intentional conduct, punitive damages are likewise not inappropriate on the face of the Amended Complaint**.**

**CONCLUSION**

For the reasons stated above, the Court will dismiss Plaintiffs' First Amendment retaliation claim against Defendant Yenchik, the Fourteenth Amendment claims against all Defendants, the state constitutional claims for damages against all Defendants, and the state law claims for damages against Defendants Butala, Kinel, and Hacken to the extent they were sued in their official capacities.  The remaining claims in this case are (1) the First Amendment claim in Count I against Defendants Wasilewski, Butala, Kincel, and Hacken, in their official and individual capacities; (2)  the state constitutional claims in Count II for declaratory and injunctive relief against all defendants, in their official and individual capacities; (3) the state tort claims for declaratory and injunctive relief in Count III against all Defendants, in their official and individual capacities; and (4) the state tort claims for damages against Defendants Wasilewski and Yenchik in their official and individual capacities and against Defendants Butala, Kinel, and Hacken in their individual capacities only.

An appropriate Order follows.


 September 7, 2007                             /s/ A. Richard Caputo
Date                                          A. Richard Caputo
                                             United States District Judge

29

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| EDWARD BENKOSKI and THEODORE CARL | CIVIL ACTION NO. 3:07-CV-0197 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| BONNIE WASILEWSKI, Clerk, Pennsylvania State Police and Member, Bear Creek Township Board of Supervisors, in her official and individual capacities, et al., | |
| Defendants. | |

## <u>ORDER</u>

**NOW**, this ___7th___ day of September, 2007, **IT IS HEREBY ORDERED** that Defendants' motions to dismiss are **GRANTED** in part and **DENIED** in part, as follows:

(1) In Count I, the First Amendment claim against Defendant Yenchik and the Fourteenth Amendment claim against all Defendants are hereby **DISMISSED**.

(2) In Count II, the Pennsylvania constitutional claim for monetary damages against all Defendants is hereby **DISMISSED**.

(3) In Count III, the state tort claims for damages against Defendants Butala, Kincel, and Hacken in their official capacities are hereby **DISMISSED**.

30

(4) Defendants' motions to dismiss all other claims in Counts I, II, and III are

hereby **DENIED**.

 /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge