**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD BENKOSKI and THEODORE CARL | CIVIL ACTION NO. 3:07-CV-0197 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| BONNIE WASILEWSKI, Clerk, Pennsylvania State Police and Member, Bear Creek Township Board of Supervisors, in her official and individual capacities, et al., | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court are the motions for summary judgment of Defendants Bonnie Wasilewski and Paulette Yenchik, (Doc. 64) and of Defendants Francis Hacken, Gerald Kincel and Jerard Butala ["PSP Defendants"]. (Doc. 69.) Because the Plaintiffs have raised no questions of material fact concerning whether a constitutional violation occurred, the Defendants' motions for summary judgment will be granted as to Plaintiffs' claims under 42 U.S.C. § 1983. Because summary judgment will be entered on the single federal claim in this case, the remaining state law claims will be dismissed without prejudice. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

In October of 2005, Plaintiff Carl organized a local political watchdog organization in Bear Creek Township known as the Residents of Bear Creek Township for Good Government and was later appointed auditor of the township. (Pl. Carl Deposition ["Carl Deposition"], Doc. 65, Ex. 2, at 17-18.) The newly elected Bear Creek Township Board of

Supervisors then chose Defendant Wasilewski as chairperson and  Defendant Yenchik as secretary/treasurer and administrative assistant. (Am. Compl., Doc. 14, ¶ 14; Carl Deposition at 37.)

In January through March of 2006, Plaintiffs Carl and Benkoski requested that Defendant Wasilewski provide copies of receipts, disbursements, and employee time cards for the township, along with information on the positions the Supervisors were performing as paid township employees.  (Am. Compl. ¶¶ 15-17; Defs.' Wasilewski and Yenchik's Answer with Affirmative Defenses to Plaintiffs' Complaint ["Def. Wasilewski Answer"], Doc. 47, ¶ 10; Carl Deposition, at 44-45; Pl. Benkoski Deposition ["Benkoski Deposition"], Doc. 65, Ex. 1, at 45-50.) Defendant Wasilewski did not provide these records, and maintains that she denied Plaintiff's request on behalf of the Bear Creek Township Supervisors and based her decision on the advice of legal counsel. (Def. Wasilewski Answer, Affirmative Defenses ¶ 6.)

In May of 2006, after Plaintiff Benkoski filed a civil action in the Luzerne County Court of Common Pleas to compel production of the records, Defendant Wasilewski and Bear Creek Township agreed to make the requested records available by June 15, 2006. (Benkoski Deposition, at 52-58.)  On June 16, 2006, Plaintiffs went to the Bear Creek Township municipal building to review records, and Plaintiff Carl started a tape recorder to document the discovery process, but neither Plaintiff Benkoski nor Plaintiff Carl asked for Defendant Yenchik's consent before recording their conversation.  (Carl Deposition, at 45-48; Benkoski Deposition, at 64-69.) After Plaintiffs' visit to the municipal building, Defendant Yenchik contacted the Pennsylvania State Police and complained that she had been tape

recorded without her permission. (Aff. of Paulette Yenchik, Doc. 83, ¶ 15; Dec. of Jerard Butala ["Butala Dec."], Doc. 72, Ex. A, ¶¶ 3-13.)

Later that week, the county court ordered that the Defendants Wasilewski and Yenchik make the requested documents available to Plaintiffs by June 30, 2006. (Am. Compl. ¶¶ 20-21; Def. Wasilewski Answer ¶ 13.)  On June 30, 2006, Plaintiffs returned to the municipal building, and again, Plaintiff Carl started a tape recorder without asking for Defendant Yenchik's consent.  (Carl Deposition, at 50-53; Benkoski Deposition, at 75.) Defendant Yenchik refused to release the records absent Defendant Wasilewski's authorization, and Defendant Wasilewski did not provide authorization. (Carl Deposition, at 53-54; Benkoski Deposition, at 75.)

In July of 2006, the Residents of Bear Creek Township for Good Government published a newsletter in which Defendant Wasilewski was accused of issuing payments without proper verification, including payments to herself, as well as refusing to provide access to public records. (Am. Compl. ¶ 24.) On July 20, 2006, Plaintiffs instituted a petition, opposed by Defendant Wasilewski, to increase the size of the Board of Supervisors from three (3) to five (5) members. (Benkoski Deposition, at 31-32; Carl Deposition, at 139-40.) The next day, Plaintiff Benkoski filed a contempt petition against Defendant Wasilewski in the county court based on her failure to provide the requested public records. (Benkoski Deposition, at 45-50; Def. Carl Interview Trans.  ["Carl Trans.'], Doc. 65, Ex. 3, at 6.)  Also, on July 24, 2006, Plaintiff Carl sent a letter to the Pennsylvania Ethics Commission requesting a ruling as to the propriety of Defendant Wasilewski's conduct. (Carl Deposition, at 24-28)

The Plaintiffs further allege that beginning on June 16, 2006, Defendants Wasilewski and Yenchik initiated a plan to file a false criminal complaint against Plaintiffs. (Am. Compl. ¶ 29.)  This plan was allegedly discussed with Defendant Hacken, who allegedly agreed to meet with and direct Defendants Butala and Kincel to assist in investigating Plaintiffs even though Defendants knew that Plaintiffs had not committed a crime. (*Id.*)  Defendants deny these allegations. (Butala Dec. ¶¶ 34-37;  Dec. of Gerald Kincel ["Kincel Dec."], Doc. 72, Ex. D, ¶¶ 13-17;  Dec. of Francis J. Hacken ["Hacken Dec."], Doc 72. Ex. C, ¶¶ 17-23.)

In the third week of July of 2006, Defendant Butala telephoned Plaintiff Carl's home, spoke with his wife, and asked her if Plaintiff Carl was a friend of Plaintiff Benkoski  (Carl Deposition, at 61-62.)  Defendant Butala also stated that he wanted to interview Plaintiff Carl about an incident that occurred at the municipal building on June 16, 2006. (*Id.*)  On July 27, 2006, Defendants Butala and Kincel went to Plaintiff Carl's home, read him his Miranda rights, and questioned him regarding the tape recordings made during his June 16 & 30, 2006 attempts to view public records. (Carl Deposition, at 69; Butala Dec. ¶¶ 20-25; Kincel Dec., ¶¶ 3-9.)

On August 11, 2006, Defendant Butala went to Plaintiff Benkoski's home, read him his Miranda rights, and questioned him regarding the tape recordings made on June 16 & 30, 2006. (Benkoski Deposition, at 84, 102-106; Butala Dec. ¶¶ 26-31.) Plaintiffs allege that Defendant Butala informed Plaintiff Benkoski that he and Plaintiff Carl were being investigated for a felony and that the investigation was being conducted at the behest of Defendant Wasilewski. (Benkoski Deposition, at 93-94.)  Defendant Butala told Plaintiff Benkoski the he was not under arrest at that time, but that Butala was proceeding

4

immediately to the Luzerne County District Attorney's Office to discuss a possible felony prosecution. (Benkoski Deposition, at 95-96, 101, 181; Butala Dec. ¶¶ 32-33.)  Defendants deny all allegations of impropriety and maintain that Defendant Butala's interviews were legitimately conducted pursuant to the complaint received from Defendant Yenchik after the June 16, 2006 tape recording incident at the municipal building.  (Butala Dec. ¶¶ 34-37; Kincel Dec. ¶¶ 13-17;  Dec. of Francis J. Hacken ["Hacken Dec."], Doc 72. Ex. C, ¶¶ 17-23.)

Plaintiffs contend that the Defendants never consulted with the Luzerne County District Attorney's Office regarding the possible prosecution of Plaintiffs and never intended to do so. (Benkoski Deposition, at 186-87.)  Plaintiffs further allege that all of Defendants' actions were taken with the knowledge that no crime was committed by Plaintiffs. (Am. Compl. ¶ 38.)

As a result of the investigation conducted by Defendants, Plaintiffs claim they were required to retain criminal defense counsel and that when their counsel contacted Defendant Kincel concerning the investigation, Kincel stated that no felony charges would be filed against Plaintiffs so long as they "ma[d]e nice" with Defendant Wasilewski. (Carl Deposition, at 91-93; Benkoski Deposition, at 195-97.)  Defendants deny that Plaintiffs were required to obtain counsel and deny that Defendant Kincel made any such statement. (Butala Dec. ¶¶ 38, 46; Kincel Dec. ¶ 12.)

Plaintiffs desire to continue to engage in political activity to achieve a fiscally sound Bear Creek Township government and a responsible Board of Supervisors. (Am. Compl. ¶ 44.)  According to the Plaintiffs, however, the Defendants have retained the option of instituting false felony charges against Plaintiffs if they do not cease their political opposition

5

to Defendant Wasilewski. (*Id.* ¶ 43.)

On November 7, 2006, the voters of Bear Creek Township changed the municipal form of government from a three (3) person Board of Supervisors to a five (5) person Board. (*Id.* ¶ 45.)  Plaintiff Benkoski, a former member of the Board of Supervisors, has been  a Democratic candidate for a newly created seat on the Board, and Plaintiff Carl has been Republican candidate for one of the newly created seats. (Benkoski Deposition, at 18-20; Carl Deposition, at 93-94.)   Plaintiffs fear being barred from serving on the Board of Supervisors, pursuant to the Pennsylvania Constitution, as a result of being convicted of baseless felony charges with which they claim to have been, and continue to be, threatened by Defendants. (Am. Compl. ¶¶ 48, 50.)  Plaintiffs also state that the police visits to their homes harmed their reputations and was a factor in their unsuccessful candidacies for the Board of Supervisors positions.  (Carl Deposition, at 93-94; Benkoski Deposition, at 203-05.)

Plaintiffs allege that on November 20, 2006, an unidentified state trooper went to Plaintiff Carl's house and spoke with his wife, supposedly to investigate the activation of a burglar alarm, although no alarm had been activated. (Carl Deposition, at 86-89.)

On April 2, 2007, Plaintiffs filed their Amended Complaint. (Doc. 14.) claiming that their First and Fourteenth Amendment rights were violated and seeking redress pursuant to 42 U.S.C. § 1983 (Am. Compl. ¶¶ 51-57.), the federal statute that provides a remedy for persons who have been deprived of their federal constitutional rights by a person acting under color of state law.  Plaintiffs also alleged that their rights to free speech, political association, and assembly under the Pennsylvania Constitution were violated. (*Id.* ¶¶ 58-59.) Finally, Plaintiffs asserted that Defendants committed the state law tort of intrusion upon

seclusion. (*Id.* ¶¶ 60-63.)  Based on these claims Plaintiffs sought monetary and equitable relief.

On April 23, 2007, Defendants Wasilewski and Yenchik filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Defendants Wasilewski and Yenchik are entitled to both qualified and governmental immunity, and that Plaintiffs' claims are barred by the *Younger* doctrine. (Mot. to Dismiss by Defs. Wasilewski & Yenchik, Doc. 17.)  On April 25, 2007, Defendants Butala and Kincel filed their motion to dismiss Plaintiffs' state law claims in Counts II and III pursuant to Rule 12(b)(1) on the grounds that these claims are barred by sovereign immunity, and to dismiss Counts I and III of Plaintiff's Amended Complaint pursuant to Rule 12(b)(6).  (Mot. of Defs. Butala & Kincel to Dismiss Pls.' Am. Compl., Doc. 18.)  Defendant Hacken filed a similar motion on May 18, 2007. (Mot. of Def. Hacken to Dismiss Pls.' Am. Compl., Doc. 33.)

On September 7, 2007, this Court entered an Order dismissing Plaintiffs' First Amendment retaliation claim against Defendant Yenchik, the Fourteenth Amendment claims against all Defendants, the state constitutional claims for damages against all Defendants, and the state law claims for damages against Defendants Butala, Kincel, and Hacken to the extent they were sued in their official capacities. (Doc. 42.)  The claims that currently remain in this case are (1) the First Amendment claim in Count I against Defendants Wasilewski, Butala, Kincel, and Hacken, in their official and individual capacities; (2)  the state constitutional claims in Count II for declaratory and injunctive relief against all defendants, in their official and individual capacities; (3) the state tort claims for declaratory and injunctive

relief in Count III against all Defendants, in their official and individual capacities; and (4) the state tort claims for damages against Defendants Wasilewski and Yenchik in their official and individual capacities and against Defendants Butala, Kincel, and Hacken in their individual capacities only.

On July 1, 2008, Defendants Wasilewski and Yenchik filed a motion for summary judgment (Doc. 64) along with a corresponding brief (Doc. 65) and statement of facts (Doc. 67). Defendants Hacken, Kincel, and Butala filed a motion for summary judgment (Doc. 69) on July 1, 2008, along with a corresponding brief (Doc. 71) and statement of facts (Doc. 70). On July 17, 2008, Plaintiffs filed briefs in opposition to both motions of summary judgment (Docs. 76, 78) and corresponding counterstatements of fact (Docs. 75, 76). Defendants Hacken, Kincel and Butala filed a reply brief (Doc. 81) on July 31, 2008, and Defendants Wasilewski and Yenchik filed their reply brief (Doc. 82) on August 7, 2008. Accordingly, the Defendants' summary judgment motions have been fully briefed and the motions are now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

8

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).   Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the

9

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. Section 1983

In Count I of their Amended Complaint, Plaintiffs Benkoski and Carl bring suit under 42 U.S.C. § 1983 alleging that Defendants Wasilewski, Hacken, Kincel, and Batula violated the Plaintiffs' First Amendment rights of free speech and association.  In order to state a claim under § 1983, Plaintiff must allege a deprivation of a right secured by the Constitution by someone acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parrat v. Taylor*, 451 U.S. 527, 535 (1981)); *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  The absence of a state actor or a constitutional harm results in the failure of Plaintiff's § 1983 claim.  *See id.*

### A. State Actor

"Although a private [party] may cause a deprivation of . . . a right, [it] may be subjected to liability under § 1983 only when it does so under color of law." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (alteration in original) (quoting *Flagg Bros., Inc., v. Brooks*, 436 U.S. 149, 156 (1978)).  Private parties are generally not considered to be acting under color of state law unless they are deemed a state actor.  *Reitz v. County of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997).

The United States Supreme Court has employed three discrete tests to determine whether there has been state action. *Mark*, 51 F.3d, at 1142.  "The first inquiry asks whether

10

'the private entity has exercised powers that are traditionally the exclusive prerogative of the state.'" *Id.* (*quoting Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982)). "The second discrete inquiry asks whether 'the private party has acted with the help of or in concert with state officials.'" *Id.* (*quoting McKeesport Hospital v. Accreditation Council for Graduate Medical Ed.*, 24 F.3d 519, 524 (3d Cir. 1994)). "Finally, the third scenario involves situation in which 'the State has so far insinuated itself into a position of interdependence with...[the acting party] that it must be recognized as a joint participant in the challenged activity.'" *Id.* (*quoting Krynicky v. University of Pittsburgh*, 742 F.2d 94, 98 (3d Cir. 1984)).

### 1. PSP Defendants

Plaintiffs allege that Defendants Hacken, Kincel and Butala violated the Plaintiffs' First Amendment rights of free expression and association in the Defendants' capacity as Pennsylvania State Police Officers. None of the Defendants dispute that they were Officers in the Pennsylvania State Police throughout the period when the events giving rise to this case transpired. Furthermore, it is uncontested in the evidence presented that the PSP Defendants identified themselves as Pennsylvania State Police Officers, presented themselves in uniform, and traveled to all meetings with the Plaintiffs in marked Pennsylvania State Police automobiles. Accordingly, the Court finds that the actions of the three PSP Defendants in this case were performed under the color of state law.

### 2. Defendant Wasilewski

Plaintiffs allege that Defendant Wasilewski engaged in retaliatory action in her role as Chairperson of the Township Supervisors and in her role as Pennsylvania State Police employee. Defendant Wasilewski admits that she was both employed by the Pennsylvania

State Police and as the Chairperson of the Bear Creek Township Supervisors, but argues that she acted only in her personal capacity, not under the color of state law, with respect to the events giving rise to this case.  Moreover, Defendant Wasilewski maintains that the events allegedly constituting retaliation in this case would have proceeded without her participation as the State Police would have investigated Plaintiffs as the result of Defendant Yenchik's June 16, 2006 complaint.

Given the facts set forth in the current case, the Court believes that the second method of inquiry used by the Supreme Court is the appropriate method to employ when determining if Defendant Wasilewski's actions were under the color of state law.  *See Mark*, 51 F.3d, at 1142.  Accordingly, Defendant Wasilewski's status as a state actor depends on the extent that she relied upon her employment with the Pennsylvania State Police and Bear Creek Township in pursuing the alleged retaliation against the Plaintiffs and whether the alleged injury was aggravated in a unique way by the presence of governmental authority. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 621-22 (1991).

After a review of the evidence presented in the case thus far, the Court determines that questions of fact remain with regard to the role Defendant Wasilewski played in the State Police actions against Plaintiffs.  Defendant Wasilewski asserts that her position as a receptionist with the Pennsylvania State Police was not a position that afforded her influence over criminal investigations.  In contrast, Plaintiffs Benkoski and Carl have offered sworn testimony that Defendant Butala indicated that the State Police investigation was the result of Defendant Wasilewski's influence, and that Defendant Kincel told the Plaintiffs' counsel that they would have no further issues with the State Police if they cooperated with

Defendant Wasilewski. (Benkoski Deposition, at 174-77, 194-95; Carl Deposition, at 91-93.) However, Plaintiff Carl testified that he had no reason to believe that Defendant Wasilewski had any power to control whether or not he was arrested.  Moreover, Plaintiff Benkoski stated in his deposition that he was unsure if Defendant Wasilewski and the investigating officers worked in the same State Police facility or had any close association. (Benkoski Deposition, at 200-01.)   As such, the evidence does not clearly resolve all questions of material fact as to whether or not Defendant Wasilewski acted under the color of state law.

### B. Constitutional Harm

In their Amended Complaint, Plaintiffs allege that the Defendants' actions violated the Plaintiffs' rights under the First and Fourteenth Amendments to the United States constitution.  The Plaintiffs' Fourteenth Amendment claims against all Defendants and First Amendment claims against Defendant Yenchik  were dismissed by this Court's  September 7, 2007 Order.  Accordingly, the Court now considers the First Amendment claims against Defendants Wasilewski, Hacken, Kincel, and Butala.

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *Connors v. Connors*, No. 3:07-CV-2186, 2008 U.S. Dist. LEXIS 37610, at *10 (E.D.Pa. May 7, 2008) (J. Caputo).

13

### 1. Protected Conduct

As detailed in this memorandum's background section, this case arises out of Plaintiffs Benkoski and Carl's efforts to obtain payroll and salary records as part of a local government group's investigation of potential waste and malfeasance in the Bear Creek Township.  None of the Defendants dispute that the Plaintiffs' actions are the type typically afforded protection under the First Amendment and the Court agrees that Plaintiffs' attempt to obtain public records as part of their investigation constituted protected activity.

### 2. Deterrence of Constitutional Rights

Plaintiffs Benkoski and Carl allege that the Defendants retaliated against their efforts to engage in this protected activity by subjecting them to criminal investigation and by placing them under the threat of criminal prosecution.  "A threat of prosecution or criminal contempt [...] raises special First Amendment concerns, for it may chill protected speech much like an injunction against speech by putting that party at an added risk of liability."  *Multimedia Holdings Corp. v. Circuit Court*, 544 U.S. 1301, 1304 (2005).  Here, the Plaintiffs have called particular attention to the potential chilling impact of the investigation on their efforts to investigate their local government and further note the adverse impact that felony charges would have on their future ability to engage in First Amendment-protected activities, such as running for or holding public office in Bear Creek Township.  While the Defendants disagree with Plaintiffs concerning the reasons for their investigation, none of their filings in this case indicate that they dispute that a threat of criminal prosecution would deter an ordinary person from investigating or voicing his displeasure with local government officers.  Accordingly, the Court finds no question in this case as to whether the type of alleged retaliation is sufficient

14

to sustain the Plaintiff's First Amendment retaliation claim.

### 3. Causal Link

In *Hartman v. Moore*, the United States Supreme Court stated that:

[w]hen the claimed retaliation for protected conduct is a criminal charge, [...] the plaintiff [...] must prove the elements of retaliatory animus as the cause of injury, and the defendant will have the same opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus.

547 U.S. 250, 260-61 (2006). "[E]stablishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." *Id.*, at 261. In a § 1983 action "the defendant will be a nonprosecutor [...] who may have influenced the prosecutorial decision but did not himself make it, and the cause of action will not be strictly for retaliatory prosecution, but for successful retaliatory inducement to prosecute." *Id.,* at 262. "The consequence is that a plaintiff [...] must show that the nonprosecuting official acted in retaliation, and must also show that he induced the prosecutor to bring charges that would not have been initiated without his urging." *Id.*

Unlike the *Hartman* case, the current case does not involve actual prosecution, and possibly lacks any involvement by a prosecutor. Rather, the Plaintiffs only complain of the threat of prosecution as suggested to them by the PSP Defendants during the interviews conducted by the State Police. The absence of tangible prosecution, however, does not render *Hartman* inapplicable in the current case as "the Supreme Court's holding in *Hartman* is broad enough to apply even where intervening actions by a prosecutor are not present." *Williams v. City of Carl Junction*, 480 F.3d 871, 876 (8th Cir. 2007); *see also Barnes v.*

15

*Wright*, 449 F.3d 709, 720 (6th Cir. 2006); *Albert v. Weaver*, No. 1:05-CV-2380, 2007 U.S. Dist. LEXIS 59817 (M.D.Pa. Aug. 15, 2007). Accordingly, the Plaintiffs in the current case must demonstrate that the PSP Defendants lacked probable cause when they investigated the complaint filed by Defendant Yenchik.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Konopka v. Borough of Wyoming*, 383 F.Supp.2d 666, 675 (M.D.Pa. 2005) (Caputo, J) (*quoting Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003)). "Although the presence of probable cause is most often regarded as a question for the jury in a civil action brought pursuant to § 1983, the Court is permitted to 'conclude that probable cause exists as a matter of law if the evidence, viewed in the light most favorable to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly.'" *Id.* (*quoting Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000)).

It is undisputed in the present case that Plaintiffs Carl and Benkoski recorded their conversations with Defendant Yenchik on June 16 & 30, 2006. All parties agree that the Plaintiffs never requested or obtained Defendant Yenchik's verbal consent to the recording. Plaintiffs, however, argue that the recording was done openly and with Defendant Yenchik's implicit consent. It is further undisputed that Defendant Yenchik filed a complaint with the Pennsylvania State Police subsequent to being recorded by the Plaintiffs. The Defendants deny that the State Police investigation in this case and any threat of prosecution were in response to the Plaintiffs' desire to investigate actions of their local government. Instead,

all Defendants argue that the investigation was conducted in reaction to Defendant Yenchik's June 16, 2006 complaint, pursuant to the Federal Wiretapping Act, 18 U.S.C. § 2511(1), and the identical Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5703(1). Plaintiff Benkoski's deposition testimony supports the Defendants' understanding of the events as he indicated that he had no evidence of a conspiracy between Defendant Wasilewski and the PSP Defendants and that he felt that Defendant Butala was simply doing his job by investigating  Defendant Yenchik's complaint. (Benkoski Deposition at 183-192.)

For the purposes of evaluating whether or not the Pennsylvania State Police had probable cause to investigate Defendant Yenchik's complaint, the Court need not reach a conclusion as to whether Yenchik's actions were sufficient in providing the Plaintiffs with consent to record their conversation.   Rather, the Court must only determine if the information possessed by the Pennsylvania State Police officers was sufficient for the officers to reasonably believe that a crime had been committed and that an investigation was warranted. *Konopka*, 383 F.Supp.2d at 675.   In light of the evidence presented, the Court finds that no reasonable fact-finder could conclude that the PSP Defendants lacked probable cause to investigate the complaint filed against the Plaintiffs.

The evidence submitted in this case eliminates any question as to whether the PSP Defendants had probable cause to investigate the wiretapping complaint made by Defendant Yenchik.  Since the existence of probable cause suggests that an investigation of the events transpiring on June 16 & 30, 2006 would have occurred even without a retaliatory motive held by the Defendants, the Plaintiffs are unable to establish a causal link between their protected conduct and the alleged retaliatory action.  This causal link is a required element

17

of a First Amendment retaliation claim, and without this causal link the Court cannot find that the Plaintiffs suffered a constitutional violation.  In turn, a suit under 42 U.S.C. § 1983 requires that a plaintiff show the presence of a constitutional violation committed by an actor operating under the color of state law.  Because they cannot show a constitutional violation in the current case, Plaintiffs' § 1983 claims against the PSP Defendants cannot proceed.  Likewise, without suffering a constitutional violation, the Plaintiffs cannot prevail on their § 1983 claim against Defendant Wasilewski, even if a reasonable fact-finder might determine that her position with the Pennsylvania State Police made her an actor under the color of state law.  Accordingly, the Court will grant the Defendants' summary judgment motions with respect to the Plaintiffs' § 1983 claims.

## II. State Law Claims

Plaintiffs also claim that the Defendants violated their rights under Article I, §§ 7, 20 and 26 of the Pennsylvania Constitution and that Defendants' actions were an intrusion upon seclusion in violation of state law.  Because the Court grants summary judgment for the single federal law claim in this case, it declines continued supplemental jurisdiction over the state law claims.  28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction, . . ."); *see also Tully v. Mott*, 540 F.2d 187, 196 (3d Cir. 1976)(" If it appears that the federal claim [...] could be disposed of on a motion for summary judgment under F.R. Civ. P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.").  Accordingly, the Court dismisses these claims without prejudice.

18

**CONCLUSION**

There is no question of material fact that the PSP Defendants acted with probable cause when investigating the wiretapping complaint filed by Defendant Yenchik.  Since the presence of probable cause eliminates any questions concerning whether a constitutional violation occurred, the Court grants Defendants Hacken, Kincel, and Butala's motion for summary judgment (Doc. 69) and Defendants Wasilewski and Yenchik's motion for summary judgment (Doc. 64) with respect to Plaintiffs' First Amendment claims brought under 42 U.S.C. § 1983.  Because all federal claims in this case have been resolved, the Court dismisses Plaintiffs' state law claims without prejudice.

An appropriate Order follows.


September 24, 2008                                    /s/ A. Richard Caputo
Date                                                         A. Richard Caputo
                                                               United States District Judge

19

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD BENKOSKI and THEODORE CARL | CIVIL ACTION NO. 3:07-CV-0197 |
|      Plaintiffs, | |
|        v. | (JUDGE CAPUTO) |
| BONNIE WASILEWSKI, Clerk, Pennsylvania State Police and Member, Bear Creek Township Board of Supervisors, in her official and individual capacities, et al., | |
|      Defendants. | |

## <u>ORDER</u>

**NOW**, this  24th  day of September, 2008, **IT IS HEREBY ORDERED** that Defendants' motions for summary judgment are **GRANTED in part,** and **DENIED in part**:

(1)    Summary judgment for Defendants Hacken, Kincel and Butala  is **GRANTED** for the claim arising under 42 U.S.C. § 1983.

(2)    Plaintiffs' state law claims against Defendants Hacken, Kincel and Butala are **DISMISSED without prejudice**.

(3)    Summary judgment for Defendant Wasilewski is **GRANTED** for the claim arising under 42 U.S.C.§ 1983.

(4)    Plaintiffs' state law claims against Defendants Wasilewski and Yenchik are **DISMISSED without prejudice.**

(5)     The Clerk of the Court shall mark this case closed.


                                        /s/ A. Richard Caputo
                                        A. Richard Caputo
                                        United States District Judge